**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

Chagrinovations, LLC,

       Plaintiff,

       -vs-

Lean In, LLC,

       Defendant.

Case No.  1:25CV2292

JUDGE PAMELA A. BARKER

MEMORANDUM OPINION & ORDER

Currently pending is Defendant Lean In, LLC's ("Defendant" or "Lean In") Motion to Dismiss Amended Complaint or, in the Alternative, Transfer Case to the United States District Court for the Western District of Arkansas.  (Doc. No. 12.)  Plaintiff Chagrinovations, LLC ("Plaintiff" or "Chagrinovations") filed a Brief in Opposition on February 9, 2026, to which Defendant replied on February 23, 2026.  (Doc. Nos. 13, 14.)  For the following reasons, Defendant's Motion is DENIED.

I.      **Factual Allegations**

      A.      **Chagrinovations enters into a Supplier Agreement with Walmart**

The Amended Complaint contains the following factual allegations.  Chagrinovations is a limited liability company based in Rocky River, Ohio.  (Doc. No. 5 at ¶ 1.)   Chagrinovations is engaged in the business of selling a wide variety of consumer products including kitchen supplies, pet supplies, painting materials, packaging materials, stationary, and recreational sports equipment.  (*Id*. at ¶ 6.)

On or about July 11, 2022, Chagrinovations became an official supplier of consumer products to Walmart.  (*Id.* at ¶ 7.)  As part of becoming a supplier, Chagrinovations entered into a Supplier Agreement with Walmart, Inc.  (*Id*.)  Pursuant to the Supplier Agreement (which is attached to the

Amended Complaint as Exhibit A), the parties thereto agreed that Walmart and, potentially Sam's Club would submit orders to Chagrinovations, and that Chagrinovations would accept any such Orders pursuant to specific procedures.  (*Id*. at ¶ 8.)   According to Chagrinovations, "the Supplier Agreement provides that under certain circumstances, including, for example, in the event of delays in delivery of products ordered from Chagrinovations, Walmart and Sam's Club have a unilateral right to cancel the corresponding order, and those entities would not owe Chagrinovations payment for any goods contemplated by the cancelled order."  (*Id*. at ¶ 9.)

### B.      Chagrinovations and Lean In enter into a Consulting Agreement

During the second half of 2022, Lean In contacted Chagrinovations.  (*Id*. at  ¶ 10.)  Lean In "is a consulting firm that assists companies like Chagrinovations with increasing the presence of their products in large retail stores."  (*Id*.)  Lean In represented to Chagrinovations that it could assist Chagrinovations by helping to increase Chagrinovations' sales to Walmart for re-sale to consumers. (*Id*.)  Chagrinovations saw a potential to benefit from the services of Lean In, so in or about December 2022, Chagrinovations hired Lean In as an independent contractor and entered into a Consulting Services Agreement (hereinafter the "Consulting Agreement").  (*Id*. at  ¶ 11.)  A copy of the parties' Consulting Agreement is attached to the Amended Complaint as Exhibit B.  (Doc. No. 5-2.)

Pursuant to the Consulting Agreement, Lean In was to assist Chagrinovations with selling its various products to Walmart and potentially Sam's Club, including by facilitating the development of relationships with those entities and assisting with presentations and other activities designed to facilitate sales.  (*Id*. at ¶ 12.)  Specifically, the "Description of Services" attached to the Consulting Agreement provides that Lean In shall provide the following services to Chagrinovations:

1.      Provide advice and consulting services relating to any and all aspects of [Chagrinovations'] products with respect to Sam's Club and Walmart;

2.     Setting up appointments and making introductions of [Chagrinovations']
representatives and products to retailers with the intent for them to sell
[Chagrinovations'] products in Sam's Club and Walmart;

3.     Assisting, creating and providing advice on presentations, sales analysis, and
strategic planning for the sales of [Chagrinovations'] products in Sam's Club
and Walmart.

(Doc. No. 5-2 at PageID# 97.)   In exchange for the above services, the Consulting Agreement

provides that Chagrinovations would pay Lean In a monthly retainer fee as well as a commission for

any products Chagrinovations sold to Walmart or Sam's Club during the term of the Consulting

Agreement.   (*Id*. at ¶ 13.)   Specifically, Paragraph 2(b) of the Consulting Agreement provides (in

relevant part) as follows:

> In addition to the Monthly Retainer Fee, [Chagrinovations] agrees to pay [Lean In] a
> 6% (six percent) commission for all orders or commitments received by
> [Chagrinovations] prior [sic] for the first year of the Term of this Agreement for all
> [Chagrinovation's] products sold to Walmart or Sam's Club, regardless of the date of
> shipment. After one full year after the Effective Date of the Agreement, the
> commission for all orders or commitments received by the [Lean In] will change to
> 5% (five percent) for the Term of this Agreement for all [Chagrinovation's] products
> sold to Walmart or Sam's Club, regardless of the date of shipment.

(*Id*.)   *See also* Doc. No. 5-2 at PageID# 91.  Chagrinovations alleges that the Consulting Agreement

does not define the term "commitment."   (*Id*. at ¶ 14.)

The Consulting Agreement provides that either Chagrinovations or Lean In could terminate

the Consulting Agreement at any time upon providing 30 days' notice to the other party.   (*Id*. at ¶

15.)  *See also* Doc. No. 5-2 at PageID# 92.  It also provides that, upon any termination, Lean In will

provide Chagrinovations with "a full and complete statement of all fees due and owing, along with

corresponding invoices for Services up to the end of the Term."   (Doc. No. 5 at ¶ 16; Doc. No. 5-2 at

PageID# 92.)  The statement is required to be provided to Chagrinovations "within a reasonable time

after termination." (*Id*.) The Consulting Agreement further indicates that upon termination, "[Chagrinovations] agrees to pay [Lean In] promptly for all fees and other amounts due for Services, any expense reimbursements up to the end of the Term, and any and all commission amounts received by [Chagrinovations]." (*Id*.) Lastly, the Consulting Agreement provides that it "shall be subject to and governed by the laws of the State of Arkansas."[1] (Doc. No. 5-2 at PageID# 95.)

### C. Chagrinovations terminates the Consulting Agreement in June 2025

From December 2022 to June 2025, Chagrinovations made a number of sales of its products to Walmart pursuant to the Supplier Agreement. (Doc. No. 5 at ¶ 18.) During that time, Lean In "had regular contacts with individuals and entities in Ohio in connection with providing" the services outlined in the Consulting Agreement. (*Id*. at ¶ 3.) Chagrinovations paid Lean In the monthly retainer fee required under the Consulting Agreement and paid commission to Lean In on completed sales that Chagrinovations made to Walmart. (*Id*. at ¶ 18.)

In June 2025, however, Chagrinovations provided Lean In "with a 30-day notice of termination of the Consulting Agreement in accordance with the terms of thereof, which termination became effective on July 24, 2025." (*Id.* at ¶ 19.) Since that time, Lean In has not provided the "full and complete statements due and owing, along with corresponding invoices for Services up to the end of the Term" as required by the Consulting Agreement. (*Id*. at ¶ 20.)

Chagrinovations alleges that Lean In "has nevertheless demanded payment of funds (specifically, commission) from Chagrinovations that is in excess of $75,000 and substantially exceeds the amount of commission Defendant is actually owed under the Consulting Agreement."

---

[1] The Consulting Agreement does not contain a forum selection clause. (Doc. No. 5-2.)

4

(*Id*. at ¶ 21.) According to Chagrinovations, Lean In's "position is that commission must be paid for goods contemplated by any 'orders' or 'commitments' submitted by Walmart or Sam's Club to Chagrinovations before the termination of the Consulting Agreement, even if such orders or commitments did not result in a sale until after the termination." (*Id*. at ¶ 22.) "By contrast, it is Chagrinovations' position that [Lean In] is only entitled to commission on orders or commitments from Walmart or Sam's Club that actually resulted in a sale to those entities during the term of the Consulting Agreement and for which Chagrinovations actually received payment from Walmart or Sam's Club (regardless of when payment is actually received)." (*Id*. at ¶ 23.) "In other words, no commission is owed to [Lean In] under the Consulting Agreement for orders or commitments from Walmart or Sam's Club to the extent such orders or commitments did not result in a sale of goods during the term of the Agreement." (*Id*. at ¶ 24.)

Further, "though Chagrinovations believes it has paid all commission it owes to [Lean In] under the Consulting Agreement, Chagrinovations has no way to confirm this belief." (*Id.* at ¶ 25.) "This is because [Lean In] has never provided – in the four months since the termination of the Consulting Agreement – the 'full and complete statements due and owing, along with corresponding invoices for Services up to the end of the Term,' as required by" the Consulting Agreement. (*Id.*)

II.     **Procedural History**

On October 23, 2025, Chagrinovations filed a Complaint in this Court against Lean In, asserting two counts for declaratory judgment regarding the terms of the Consulting Agreement.[2]

---

[2] On October 24, 2025, this Court issued an Order directing Chagrinovations to "clarify whether Plaintiff and Defendant are corporations or LLCs" and, if the latter, "identify the citizenship of all of the members (and sub-members, if any) of both Plaintiff Chagrinovations, LLC and Defendant Lean In, LLC at the time the Complaint was filed." (Doc. No. 3.) On November 12, 2025, Chagrinovations filed a Response to this Court's Order in which it clarified that both Plaintiff and Defendant are LLCs. (Doc. No. 10.) Chagrinovations identified its members and sub-members and stated that they

(Doc. No. 1.)  Chagrinovations thereafter filed an Amended Complaint against Lean In on November 6, 2025, in which it set forth the same two counts. (Doc. No. 5.)  Specifically, in Count I, Chagrinovations seeks a declaration that "no commission is owed to Defendant for orders or commitments received from Walmart or Sam's Club to the extent such orders or commitments did not result in an actual sale prior to the July 24, 2025 termination and subsequent or contemporaneous payment to Chagrinovations." (*Id*. at PageID# 63.)  In Count II, Chagrinovations seeks a declaration that "Defendant's failure to provide the information required by paragraph 3 of the Consulting Agreement within a reasonable time as required relieves Chagrinovations of any further obligations it may have under the Consulting Agreement, including any obligation to pay additional funds that may be owed to Defendant." (*Id*. at PageID#s 64-65.)

On January 8, 2026, Lean In filed its Motion to Dismiss the Amended Complaint for lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  (Doc. No. 12.)  In the alternative, Lean In argues that the instant action should be either dismissed for improper venue under 28 U.S.C. § 1391(b)(2) or transferred to the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).  (*Id*.)  Lean In supports its Motion with the Declaration of its Chief Executive Officer ("CEO") and sole member, Heather Wiseman.  (Doc. No. 12-2.)  On February 9, 2026, Chagrinovations filed a Brief in Opposition, which it supports with the Declaration of its Chief Operating Officer ("COO") Derek Naim.  (Doc. Nos. 13, 13-1.)  Lean In filed its Reply Brief on February 23, 2026.  (Doc. No. 14.)

---

are citizens of Ohio, New Zealand, and China.  (*Id*.)  Chagrinovations also represented that Lean In's sole member, Heather Wiseman, is a citizen of Arkansas.  (*Id*.)

### III.     Standards of Review

### A.     Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[t]he party seeking to establish the existence of personal jurisdiction bears the burden to establish such jurisdiction.'" *Beydoun v. Wayaniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir. 2014)).  If a court rules on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614, n.7 (6th Cir. 2005) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx 425, 434 (6th Cir. 2006).

In the instant case, neither party indicates that a hearing is necessary.  Having reviewed the parties' briefs and declarations attached thereto, the Court concludes that a hearing will not assist the Court and that Lean In's Motion may be resolved by the parties' written submissions.

Where, as here, the district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  To defeat such a motion, a plaintiff need only make a *prima facie* showing of jurisdiction, which can be done merely through the complaint.  *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings*

7

*Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).  The burden then shifts to the defendant, whose

motion to dismiss must be properly supported with evidence.  *Id.* (citing *Theunissen*, 935 F.2d at

1458).  Once the defendant has met the burden, it returns to the plaintiff, who may no longer "stand

on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has

jurisdiction."  *Id.* (quoting *Theunissen*, 935 F.2d at 1458).

When analyzing the parties' submissions, the Court "does not weigh the controverting

assertions of the party seeking dismissal." *CompuServe,* 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d

at 1459).  *See also Carbone v. Kaul*, 140 F.4th 805, 809 (6th Cir. 2025); *Peters Broadcast

Engineering, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 438 (6th Cir. 2022).  "Dismissal in this procedural

posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a

*prima facie* case for jurisdiction." *CompuServe,* 89 F.3d at 1262.

### B.      Venue

As noted above, in its Motion, Lean In argues in the alternative that the instant action should

be dismissed for improper venue under 28 U.S.C. § 1391(b)(2) or transferred to the United States

District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).  The Court will

set forth the standards of review for these requests separately, below.

### 1.      Motion to Dismiss for Improper Venue under 28 U.S.C. § 1391(b)(2)

Under Federal Rule of Civil Procedure 12(b)(3),[3] a party may move to dismiss a complaint

for improper venue.  *See* Fed. R. Civ. P. 12(b)(3).  "[W]hen a defendant files a 12(b)(3) motion to

dismiss for improper venue, the plaintiff must show by a preponderance of the evidence that venue

---

[3] Lean In does not expressly cite or reference Fed. R. Civ. P. 12(b)(3) in its Motion or Reply.  (Doc. Nos. 12-1, 14.).
However, as Lean In clearly seeks dismissal for improper venue under 28 U.S.C. § 1391(b)(2) (Doc. No. 12-1 at PageID#
129-130), the Court construes Lean In's request as being made pursuant to Fed. R. Civ. P. 12(b)(3).

is proper." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025). *See also DocuVoice, LLC v. Kiwi-Tek, LLC*, 2026 WL 1122172 at * 2 (W.D. Tenn. March 25, 2026); *Kettering Adventist Heathcare v. Jade Designs, LLC*, 2021 WL 4844082 at * 2 (S.D. Ohio Oct. 18, 2021).

In determining whether venue is proper, a district court "has three options: it can resolve the motion on the papers; it can resolve the motion with an evidentiary hearing; or it can permit discovery in aid of deciding the motion." *Tobien*, 133 F.4th at 621. "The district court has the discretion to decide the appropriate procedure for deciding a motion to dismiss for improper venue." *Kettering Adventist Heathcare*, 2021 WL 4844082 at * 2. "But '[h]owever the court handles the motion, the plaintiff always bears the burden of establishing' that venue exists." *Tobien*, 133 F.4th at 621 (quoting *Serras*, 875 F.2d at 1214).

Here, neither party indicates that discovery or a hearing are necessary. Having reviewed the parties' briefs and declarations attached thereto, the Court concludes that Lean In's Motion may be resolved by the parties' written submissions. Where a Rule 12(b)(3) motion is decided solely on the pleadings and affidavits, the district court "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Kinzie Advanced Polymers LLC v. Calyx Containers, LLC*, 2025 WL 2903642 at * 3 (N.D. Ohio Sept. 17, 2025). To defeat a Rule 12(b)(3) motion to dismiss for improper venue, a plaintiff must "show that his pleadings and affidavits, if accepted as true, would establish that venue was proper." *Tobien*, 133 F.4th at 621. *See also Kinzie Advanced Polymers LLC*, 2025 WL 2903642 at * 3; *Reilly v. Meffe*, 6 F.Supp.3d 760, 765 (S.D. Ohio March 19, 2014). Moreover, "venue must be proper for each claim and for each defendant." *Kinzie Advanced Polymers LLC*, 2025 WL 2903642 at * 3. *See also Reilly*, 6 F.Supp.3d at 765.

**2.      Motion to Transfer Venue under 28 U.S.C. § 1404(a)**

9

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In considering a motion brought under 28 U.S.C. § 1404(a), a district court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). "[W]hen a defendant moves to transfer a case from one proper venue to another under 28 U.S.C. § 1404(a), the defendant bears the burden to show that a transfer is warranted." *Tobien*, 133 F.4th at 618, fn 2. *See also Means v. U.S. Conf. of Cath. Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016); *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) (citing 15 Charles Alan Wright, Arthur R. Miller & Edward Cooper, Federal Practice & Procedure, §§ 3844, 3847-3848 (2d. ed. 2005)).

The first inquiry is whether the proposed alternative venue is a district where the action may have been brought.[4] *See* 28 U.S.C. § 1404(a); *Bbc Ice Cream, LLC v. Spreadshirt, Inc.*, 2026 WL 878806 at *10 (N.D. Ohio March 31, 2026). Next, the Court must weigh case-specific factors, private factors, and public-interest factors. *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Case-specific and private factors include, but are not limited to: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and

---

[4] This inquiry consists of three questions: (1) whether the proposed alternative court could exercise original jurisdiction over this case; (2) whether that court would have personal jurisdiction over the defendants; and (3) whether venue would be proper in that court. *See Zimmer Enters, Inc.. v. Atlandia Imps., Inc.,* 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007) (citations omitted); *Bbc Ice Cream, LLC v. Spreadshirt, Inc.*, 2026 WL 878806 at * 10 (N.D. Ohio March 31, 2026).

inexpensively; and (7) the interest of justice.  *See, e.g., Means*, 836 F.3d at 651-52; *Bbc Ice Cream, LLC*, 2026 WL 878806 at *10; *DocuVoice, LLC*, 2026 WL 1122172 at * 4; *Woods v. Brooks,* 2020 WL 2182983 at *3 (S.D. Ohio May 6, 2020).  "'Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law.'"  *Woods*, 2020 WL 2182983 at *3 (quoting *Flatt v. Aspen Dental Management, Inc*., 2019 WL 6044159 at *2 (S.D. Ohio Nov. 15, 2019).  The Court need not discuss each factor but, rather, should focus its analysis on those factors that are particularly relevant.  *See Bbc Ice Cream, LLC*, 2026 WL 878806 at *10.

After weighing the relevant factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)).  "District courts have wide discretion in deciding motions to transfer."  *Zimmer Enters., Inc.*, 478 F.Supp.2d at 990.  *See also DocuVoice*, 2026 WL 1122172 at * 4; *Bbc Ice Cream, LLC*, 2026 WL 878806 at * 9.

## IV.  Analysis

### A.  Personal Jurisdiction

Lean In first argues that this Court lacks personal jurisdiction over it because "Ohio is not its home state and there is no connection between Lean In and Ohio relating to Chagrinovations' claims in this case." (Doc. No. 12-1 at PageID# 119.)  Lean In asserts that the Amended Complaint fails to set forth sufficient allegations "to establish with any particularity that Lean In had contacts with Ohio sufficient to satisfy the relevant long-arm statute or due process requirements."  (Doc. No. 12-1 at PageID# 121.)  Thus, Lean In argues that Chagrinovations has "failed to make even a *prima facie* showing that Lean In is subject to personal jurisdiction in Ohio." (*Id*.)  Lean In then asserts that, even

assuming Chagrinovations had sufficiently alleged a *prima facie* case of jurisdiction in its Amended Complaint, "the evidence establishes that Due Process would be violated if this Court were to exercise personal jurisdiction." (*Id*.) Specifically, and relying heavily on the Declaration of its CEO, Ms. Wiseman, Lean In argues that personal jurisdiction does not exist because Lean In has no employees or physical presence in Ohio and did not provide any services regarding the Consulting Agreement in this State. (*Id.* at PageID#s 123-129.)

In response, Chagrinovations argues that it has more than met its burden of demonstrating that this Court has specific personal jurisdiction over Lean In. (Doc. No. 13 at PageID#s 147-157.) Relying on both its allegations in the Amended Complaint and the Declaration of its COO, Mr. Naim, Chagrinovations argues that Lean in "engaged in multiple actions specifically directed at Ohio," including (1) specifically reaching out to make the initial contact with Chagrinovations; (2) communicating with Chagrinovations' Ohio-based representatives to negotiate and enter into the Consulting Agreement; (3) sending the Consulting Agreement to Chagrinovations at its Rocky River office; (4) establishing a long-standing business relationship with Chagrinovations; (5) providing services to and communicating with Chagrinovations through phone calls, emails, and other communications directed to Chagrinovations' representatives in Ohio; (6) physically visiting Chagrinovations' office in Rocky River to discuss matters related to the parties' business relationship; and (7) sending its demand letter to Chagrinovations in Ohio. (*Id*. at PageID#s 148-149.)

"In a diversity case, a federal court can exercise personal jurisdiction over a defendant if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Tharo Systems, Inc. v. Cab Producktechnik GMBH & Co., KG*, 196 Fed. Appx 366 (6th Cir. 2006). Jurisdiction under Ohio's long-arm statute

12

is governed by Ohio Rev. Code § 2307.382 and the due process inquiry requires determining "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)).

As noted above, Lean In argues that this matter must be dismissed because it is not subject to either general or specific personal jurisdiction in Ohio. As the Sixth Circuit has explained, "[p]ersonal jurisdiction comes in two flavors: [1] 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and [2] 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). *See also Malone*, 965 F.3d at 501 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Carbone*, 140 F.4th at 810.

Chagrinovations does not acknowledge or address Lean In's arguments regarding general jurisdiction (Doc. No. 12-1 at PageID#s 123-124) and, instead, limits its arguments to the issue of specific personal jurisdiction. Thus, and in the absence of any opposition on this issue, the Court finds that general jurisdiction does not exist and will limit its analysis to the question of whether Chagrinovations has made a *prima facie* showing of specific personal jurisdiction over Lean In. The Court will address the parties' arguments under the Due Process Clause and Ohio's Long Arm Statute separately, below.

### 1.  Due Process

In determining whether specific personal jurisdiction exists, "the crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  *See also Carbone*, 140 F.4th at 809- 810; *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021); *CompuServe, Inc.*, 89 F.3d at 1263; *Theunissen*, 935 F.2d at 1459.  The Sixth Circuit has established the following three-part test for determining whether specific personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.*, 89 F.3d at 1263.  *See also Carbone*, 140 F.4th at 810; *Beydoun*, 768 F.3d at 505; *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Southern Mach. Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

### a.  Purposeful Availment

The question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for *in personam* jurisdiction." *Mohasco Indus.*, 401 F.2d at 381–82.  *See also Carbone,* 140 F.4th at 811 ("We have described the purposeful-availment component as 'the constitutional touchstone of personal jurisdiction.'") (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016)).  The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the

defendant *himself* that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75 (1985) (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980)). *See also Beydoun*, 768 F.3d at 505-506; *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).

Courts require purposeful availment to insure that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp*., 471 U.S. at 475. In this regard, the Supreme Court has explained that, in examining a defendant's contacts, courts "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State." *Id*. at 286. "Simply put, '[t]he contacts must be the defendant's own choice.'" *Carbone*, 140 F.4th at 810 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351, 359 (2021)).

Here, Lean In argues that Chagrinovations has failed to allege sufficient facts to establish purposeful availment and that, in any event, the Declaration of Ms. Wiseman establishes that exercising specific personal jurisdiction over Lean In in Ohio would not comport with Due Process. (Doc. No. 12-1 at PageID#s 125-126.) In her Declaration, Ms. Wiseman avers that Lean In "is a limited liability company organized under the laws of Arkansas" and that its "principal place of business is, and has always been, in Arkansas." (Doc. No. 12-2 at PageID#s 134-136.) She avers that Lean In is registered to do business in Arkansas, and that "it is not registered to do business in

Ohio nor has it ever registered to do business in Ohio." (*Id*.) Ms. Wiseman further avers that (1) Lean In has never owned nor possessed any real property in Ohio; (2) none of Lean In's members are residents of Ohio; (3) Lean In does not have employees in Ohio; and (4) Lean In has never maintained inventory or bank accounts in Ohio. (*Id*.)

According to Ms. Wiseman, "Lean In does not conduct business in Ohio." (*Id*.) She indicates that "Lean In does not manufacture any products nor distribute anything" but, rather, its "primary services involve developing strategies and otherwise assisting third parties to increase product sales and overall product presence in Walmart and Sam's Club stores." (*Id*.) Ms. Wiseman avers that Lean In performed the services pursuant to the parties' Consulting Agreement "exclusively in Arkansas" and that, "[i]In doing so, Lean In contacted, communicated, and scheduled meetings with representatives of Walmart in Arkansas." (*Id*.) She avers that "Lean In representatives also met in person with representatives of Chagrinovations in Arkansas" and that "[n]o representative from Lean In ever travelled to Ohio for the purpose of the agreement or to perform any services at issue in this lawsuit." (*Id*.) In sum, Ms. Wiseman avers that "Lean In did not perform any services under the agreement in Ohio." (*Id*.)

Based on the above, Lean In argues that it did not purposefully avail itself of the privilege of acting in Ohio. (Doc. No. 12-1.) It maintains that Chagrinovations' allegations that Lean In had "regular contacts with individuals and entities in Ohio" is insufficient for Lean In to have purposefully availed itself of the privilege of acting in this State. (*Id*. at PageID# 126.) Lean In further asserts that the mere fact that it entered into a contract with an Ohio company is insufficient to establish purposeful availment. (*Id*.) Lastly, Lean In emphasizes that the parties' Consulting Agreement provides that it is governed by Arkansas law. (*Id*.)

16

In response, Chagrinovations argues that Lean In purposefully availed itself of the privilege of acting in Ohio because Lean In (1) initially reached out to Chagrinovations for the purpose of forming a business relationship; (2) communicated with Chagrinovations' Ohio-based representatives to negotiate the terms of the Consulting Agreement; (3) established a long-standing business relationship with Chagrinovations; and (4) provided services to Chagrinovations through phone calls, emails, and other communications directed to Chaginovations' representatives in Ohio, including a physical visit to Chagrinovations' office in Ohio.  (Doc. No. 13 at PageID#s 148-151.)

In support of its position, Chagrinovations relies on the Declaration of Mr. Naim.  (Doc. No. 13-1 at PageID#s 166-168.)  Therein, Mr. Naim avers that Chagrinovations has its office and principal place of business in Rocky River, Ohio, and that "nearly all of Chagrinovations' employees are Ohio residents who live and work in the vicinity of Rocky River."  (*Id*.)  He avers that "[d]uring the second half of 2022, a representative of [Lean In] contacted Chagrinovations, and offered to assist Chagrinovations in increasing its sales to Walmart."  (*Id*.)  Mr. Naim maintains that Chagrinovations "subsequently engaged in negotiations and discussions with [Lean In]" and Lean In thereafter sent a proposed Consulting Agreement to Chagrinovations' Rocky River office. (*Id*.)  Mr. Naim indicates that he executed the Consulting Agreement in Rocky River.  (*Id*.)

Mr. Naim then avers that, from December 2022 to June 2025, Lean In provided services under the Consulting Agreement.  (*Id.*)  According to Mr. Naim, "[t]he services were provided via email, telephone calls, and Zoom conferences, as well as deliverables sent to and received by Chagrinovations at its office" in Rocky River.  (*Id*.)  Mr. Naim avers that "throughout this time, [Lean In] and Chagrinovations engaged in regular communication by phone and email, including regularly scheduled Zoom calls" and that "a vast majority of these communications occurred when

Chagrinovations' representatives were in Ohio." (*Id*.)  In addition, Mr. Naim avers that's "[i]n the fall of 2023, a representative of [Lean In] met with Chagrinovations' representatives at Chagrinovations' Rocky River office to discuss matters related to the Consulting Agreement." (*Id*.)

Mr. Naim avers that, in June 2025, Chagrinovations sent Lean In a 30-day notice of termination of the Consulting Agreement. (*Id*.)  He indicates that "soon after receiving notice of the termination, [Lean In] contacted Chagrinovations via email, claiming that Chagrinovations breached the Consulting Agreement by failing to pay commission to [Lean In] for 'commitments' that Walmart made to purchase Chagrinovations' products prior to the Termination Date." (*Id*.)  Mr. Naim avers that "Chagrinovations received this email in Rocky River, Ohio." (*Id*.)  Based on the above, Chagrinovations argues that Lean In's "actions are more than sufficient to establish .. purposeful availment of this forum." (Doc. No. 13 at PageID# 149.)  Lastly, Chagrinovations argues that "Defendant's actions, including the services it provided under the Consulting Agreement, caused an impact in Ohio by allowing Chagrinovations to earn increased revenue in this state." (*Id*. at PageID#s 150-151.)

In its Reply Brief, Lean In insists that it did not purposefully avail itself of acting in Ohio, arguing that it "is an Arkansas company that performed services in Arkansas pursuant to a Consulting Agreement governed by Arkansas law." (Doc. No. 14 at PageID# 172.)  Lean In maintains that, even accepting Mr. Naim's averments as true, the contacts described in Naim's Declaration are insufficient to demonstrate purposeful availment. (*Id*.)  Specifically, Lean In asserts that this matter is indistinguishable from *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000),  in which the Sixth Circuit found that the mere fact that a defendant entered into a contract with an Ohio-based plaintiff and communicated via phone, fax, and mail with the plaintiff in Ohio, was insufficient to establish

18

specific personal jurisdiction.  (*Id*. at PageID#s 172-177.)  Lean In further maintains that, as in *Calphalon*, "the agreement and association between Lean In and Chagrinovations centered on Lean In representing Chagrinovations and providing services in Arkansas" – not Ohio.  (*Id*.)  In sum, Lean In asserts that Chagrinovations cannot show purposeful availment because Lean In's contacts with Ohio (including its phone, email and Zoom communications with Chagrinovations) "occurred solely because Chagrinovations chose to have an office in Ohio, not because Lean In sought to further its business and created 'continuous and substantial' consequences there."  (*Id*.)

Construing the facts in Chagrinovations' favor, the Court finds that Lean In purposefully availed itself of the privilege of acting in Ohio.  The Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *Burger King,* 471 U.S. at 473.  Here, Chagrinovations has both alleged in the Amended Complaint and come forward with evidence that it was Lean In that initiated the parties' business relationship when it "reached out" to Chagrinovations in Ohio and "offered to assist Chagrinovations in increasing its sales to Walmart."  (Naim Decl. at ¶ 6, PageID# 166; Doc. No.  5 at ¶ 10, PageID# 60.)  Chagrinovations has also come forward with evidence that Lean In sent the proposed Consulting Agreement to Chagrinovations' office in Ohio and that Mr. Naim executed that Agreement in Ohio.  (Naim Decl. at ¶¶ 8, 9, PageID#s 166-167.)  *See Air Products and Controls, Inc. v. Safetech Intern., Inc*. 503 F.3d 544, 551 (6th Cir. 2007) (finding purposeful availment where "Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan."); *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls

19

and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.")  *See also Parker Hannifin Corp. v. Standard Motor Products, Inc.*, 2019 WL 5425242 at * 10 (N.D. Ohio Oct. 23, 2019).

Moreover, the Court notes that the parties did not engage in a "one-time transaction" but, rather, created a continuing business relationship that lasted over two years and included ongoing communications between Lean In and Chagrinovations in Ohio.  Chagrinovations has both alleged and come forward with evidence that Lean In provided services under the Consulting Agreement for approximately two and a half years (i.e., from December 2022 to June 2025) and that the parties engaged in "regular communication by phone and email" regarding those services throughout this time period.  (Naim Decl. at ¶¶ 10-13, PageID# 167; Doc. No. 5 at ¶¶ 3, 11, 18, 19, PageID#s 58-61.)  Chagrinovations has also provided evidence that "a vast majority of these communications occurred when Chaginovations' representatives were in Ohio."  (Naim Decl. at ¶ 13, PageID# 167; Doc. No. 5 at ¶ 3, PageID# 59.)

Chagrinovations has also alleged and come forward with evidence that the Consulting Agreement established continuing obligations between Lean In and Chagrinovations.  Specifically, pursuant to the parties' Agreement, Chagrinovations agreed to pay Lean In a monthly retainer fee and certain commissions, in exchange for Lean In performing the following services:  (1) "[p]roviding advice and consulting services relating to any and all aspects of [Chagrinovations'] products with respect to Sam's Club and Walmart;" (2) "[s]etting up appointments and making introductions of [Chagrinovations'] representatives and products to retailers with the intent for them to sell [Chagrinovations'] products in Sam's Club and Walmart;" and (3) "[a]ssisting, creating, and providing advice on presentations, sales analysis, and strategic planning for the sales of

[Chagrinovations'] products in Sam's Club and Walmart."  (Doc. No. 5 at ¶¶ 12-13, PageID#s 60-61; Doc. No. 5-2 at PageID#s 91, 97.)  And Chagrinovations has alleged (and come forward with evidence) that, pursuant to the parties' Agreement, it in fact paid Lean In commission on certain sales as well as the monthly retainer fee.  (Naim Decl. at ¶ 16, PageID# 167; Doc. No. 5 at ¶ 18, PageID# 61.)  Moreover, the Court notes that the Consulting Agreement includes provisions setting forth the parties' respective continuing obligations relating to confidentiality and indemnification.  (Doc. No. 5-2 at PageID#s 92-93.)

In addition, Chagrinovations has alleged, and come forward with evidence, that Lean In provided the services outlined in the Consulting Agreement from December 2022 to June 2025 "via email, telephone calls, and Zoom conferences, as well as deliverables sent to and received by Chagrinovations at its office in Rocky River, Ohio."  (Naim Decl. at ¶¶ 10-13, PageID# 167; Doc. No. 5 ¶ 3.)  Chagrinovations has also come forward with evidence that "in the fall of 2023, a representative of Defendant met with Chagrinovations' representatives in person at Chagrinovations' Rocky River office to discuss matters related to the Consulting Agreement."[5]  (Naim Decl. at ¶ 14, PageID# 167.)

Under similar circumstances, federal courts (including the Sixth Circuit) have found such contacts to be sufficient to demonstrate purposeful availment.  *See, e.g., Air Products and Controls, Inc.*, 503 F.3d at 551 (finding purposeful availment where defendant reached out to the forum state

---

[5] While Lean In's CEO Ms. Wiseman avers that "[n]o representative from Lean In ever travelled to Ohio for the purpose of the agreement or to perform any services at issue in this lawsuit," this Court "does not weigh the controverting assertions of the party seeking dismissal." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).  *See also Carbone*, 140 F.4th at 809; *Peters Broadcast Engineering, Inc.*, 40 F.4th at 438.  Rather, because the Court is resolving the instant Motion without conducting an evidentiary hearing, the Court "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1458).

21

to conduct business with plaintiff; the parties had a continuing business relationship that lasted many years; and defendant frequently contacted plaintiff in the forum state through telephone, email, fax, and regular mail); *CompuServe*, 89 F.3d at 1263-1264 (finding purposeful availment where defendant "deliberately set in motion an ongoing marketing relationship with [plaintiff]"); *Speedeon Data, LLC v. Integrated Direct Marketing, LLC*, 718 Fed. Appx. 333, 336 (6th Cir. 2017) (finding purposeful availment where defendant "pursued a relationship with Speedeon in Ohio, communicated and negotiated through emails and phone calls with Speedeon personnel in Ohio, entered into agreements for work to be completed in Ohio, and sent payments to Ohio.")  *See also Calvary Industries, LLC v. TAV Holdings, Inc.*, 2022 WL 17536723 at *4-5 (S.D. Ohio Dec. 8, 2022) (finding purposeful availment where, among other things, defendant initiated a business relationship with plaintiff and communicated regularly with plaintiff via telephone, email, and text message in Ohio for over a year); *Ripepi v. USA Taekwondo, Inc.*, 2021 WL 4459465 at *7 (N.D. Ohio Sept. 29, 2021) (finding purposeful availment where defendants initiated the business relationship with plaintiff and subsequently engaged in negotiations with plaintiff in Ohio regarding that relationship, thereby creating a "substantial connection between themselves and Ohio").

Lean In argues, however, that Chagrinovations has failed to establish purposeful availment because the "agreement and association between Lean In and Chagrinovations centered on Lean In representing Chagrinovations and providing services *in Arkansas*."  (Doc. No. 14 at PageID# 176) (emphasis in original).  Lean In thus maintains that "its performance of the agreement was not focused on exploiting any market in Ohio" and, instead," was "focused on providing services in Arkansas to Arkansas-based entities." (*Id.*)

22

The Court finds this argument to be without merit.  While some of the services outlined in the Consulting Agreement may have involved Lean In speaking and meeting with representatives of "Arkansas-based entities" such as Walmart, Chagrinovations has come forward with sufficient evidence to show that other services provided by Lean In under the Consulting Agreement were provided to Chagrinovations in Ohio via email, telephone calls, and Zoom conferences.  Specifically, and as noted *supra,* the "Description of Services" attached to the Consulting Agreement provides that, in exchange for payment of the monthly retainer fee and commissions, Lean In will (among other things) "[p]rovide advice and consulting services relating to any and all aspects of [Chagrinovations'] products with respect to Sam's Club and Walmart" and "[a]ssist[], creat[e], and provid[e] advice on presentations, sales analysis, and strategic planning for the sales of [Chagrinovations'] products in Sam's Club and Walmart."  (Doc. No. 5 at ¶¶ 12-13, PageID#s 60-61; Doc. No. 5-2 at PageID#s 97.)  In other words, Lean In agreed to provide advice to, and consult with, *Chagrinovations* in order to assist with its strategic planning and sales efforts to stores like Walmart and Sam's Club.  And Chagrinovations has both alleged and provided evidence that Lean In provided these types of services under the Consulting Agreement "via email, telephone calls, and Zoom conferences, as well as deliverables sent to and received by Chagrinovations at its office in Rocky River, Ohio."  (Naim Decl. at ¶ 11, PageID# 167; Doc. No. 5 at ¶ 3, PageID# 59.)  Thus, the Court rejects Lean In's argument that the Consulting Agreement was "directed entirely at Arkansas" and focused exclusively on "providing services in Arkansas to Arkansas-based entities."  (Doc. No. 14 at PageID# 176.)

The Court also rejects Lean In's reliance on the Sixth Circuit's decision in *Calphalon v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  In that case, the Sixth Circuit found that defendant (a

Minnesota-based sales representative for Calphalon cookware products) lacked sufficient minimum contacts with Ohio to permit the exercise of personal jurisdiction by an Ohio court under the due process clause. *Calphalon*, 228 F.3d at 723. Defendant was the exclusive manufacturer's representative for Calphalon in the states of Minnesota, Iowa, North Dakota, South Dakota, and Nebraska from 1980 to January 1998. *Id*. at 720. Between 1980 and 1986, a "letter agreement" controlled the parties' relationship. *Id*. Then, in 1996 and 1997, defendant executed a one-year manufacturer's representative agreement with Calphalon to promote the sale of Calphalon's products and keep Calphalon informed of market conditions. *Id*. During the term of the agreements, defendant made two visits to Ohio and communicated with Calphalon in Ohio via telephone, fax, and mail. *Id*. In addition, the one-year agreement stated that the Agreement "shall be interpreted under the laws of the State of Ohio." *Id*. At the end of 1997, Calphalon notified defendant that it did not intend to renew the agreement. *Id*. The following year, Defendant notified Calphalon of its claims for breach of contract and unpaid commissions. *Id*. at 721.

Calphalon then filed a declaratory judgment action in the United States District Court for the Northern District of Ohio. *Id*. Defendant subsequently filed suit in Minnesota state court, asserting its breach of contract claims. *Id*. Defendant filed a special appearance in the Ohio federal case and moved for dismissal under Fed. R. Civ. P. 12(b)(2), alleging lack of personal jurisdiction. *Id*. The Ohio district court granted the motion to dismiss, finding that defendant lacked sufficient minimum contacts with Ohio to meet due process requirements. *Id*. Calphalon appealed.

The Sixth Circuit affirmed. The court first found that defendant did not purposefully avail itself of the privilege of acting in Ohio because defendant's performance of the parties' agreement

was "not focused on exploiting any market for cookware in the State of Ohio."  *Id*. at 723.

Specifically, the Sixth Circuit explained as follows:

> Calphalon presents the following facts to demonstrate purposeful availment: the 1997 agreement that is the subject of this declaratory judgment action; the agreement's choice of law provision; Rowlette's duties to monitor market conditions and report to Calphalon; Rowlette's telephone and fax contacts with Calphalon; J. Rowlette's visits to Calphalon offices in Ohio; and Rowlette's letter threatening litigation.
>
> We think the district court correctly recognized that the mere existence of a contract between Rowlette and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over Rowlette.  In *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174, the Supreme Court stated that "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" must be considered to determine whether "the defendant purposefully established minimum contacts within the forum."  We interpret this statement to mean that the parties' actions "in the negotiation and performance of the ... agreement" are more important factors to consider than the duration of the contract in determining whether this case "should be subject to suit in Ohio."  Moreover, in *LAK*, 885 F.2d at 1301, we noted that the *quality* rather than the quantity of the contacts is the proper subject of review.  Similarly, we should focus here on the *quality* of the parties' relationship, rather than the *duration* of the relationship.
>
> In examining the *quality* of the parties' relationship, we find that the actual course of dealings between the parties demonstrates that Rowlette's contacts with Ohio were purely "fortuitous" and "attenuated."  ***  In this case, the agreement and previous association between Calphalon and Rowlette centered on Rowlette representing Calphalon in the states of Minnesota, Iowa, South Dakota, North Dakota, and Nebraska.  Rowlette's performance of the agreement was not focused on exploiting any market for cookware in the state of Ohio.  Moreover, Rowlette's phone, mail, and fax contact with Calphalon in Ohio and J. Rowlette's physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create "continuous and substantial" consequences there.  *See id*.  Arguably, Rowlette would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operation.  Thus, Rowlette's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction.

*Id*. at 722-723 (italics in original) (internal citations omitted).  The Sixth Circuit further found that

the Ohio choice of law provision in the parties' 1997 agreement was "not decisive."  *Id*. at 723.

Lastly, the Sixth Circuit determined that neither the "arising from" or "reasonableness" requirements were met because "the facts at issue did not occur in the forum state nor were the consequences of the breach substantially connected to the forum state." *Id*. at 724.

For the following reasons, the Court finds *Calphalon* to be distinguishable.  Unlike the defendant in *Calphalon*, Lean In affirmatively reached out to Chagrinovations in Ohio to initiate and establish an ongoing business relationship between the parties.  Thus, Lean In's contacts with Ohio were not "solely because [Chagrinovations] chose to be headquartered in Ohio."  *Calphalon, supra*. Rather, viewing the evidence in a light most favorable to Chagrinovations, Lean In's contacts with Ohio were a product of Lean In's decision to contact and solicit Chagrinovations in Ohio, and conduct negotiations with Chagrinovations in Ohio to create a business relationship that involved ongoing, mutual obligations.  Indeed, the Sixth Circuit has itself distinguished *Calphalon* on this basis.  *See Tharo Systems, Inc.*, 196 Fed. Appx. at 371 (distinguishing *Calphalon* by noting that "[defendant's] contacts with Ohio, however, were not 'solely a result of [plaintiff's] choice of location' because [defendant] affirmatively reached out to [plaintiff] in Ohio to negotiate the [Letter of Understanding] in an effort to strengthen the parties' mutual business relationship.  In contrast, there is no mention in *Calphalon* that Rowlette 'reached out' to Ohio to negotiate with Calphalon.").  *See also, e.g., Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F.Supp.3d 912, 922-923 (N.D. Ohio 2019) (distinguishing *Calphalon* and finding purposeful availment where defendant "directed activity into Ohio by communicating with and sending hemp samples to Plaintiff for the purpose of initiating and sustaining a continuous business relationship there, which carried with it mutual obligations for performance within the state.")

In addition, the defendant in *Calphalon* did not appear to perform any services in Ohio. *See Commodigy*, 417 F.Supp.3d at 922-923 (noting that, in *Calphalon,* there was an "absence of any activity by [defendant] himself directed into the forum state" and remarking that "it appears that [defendant] simply arranged sales in other states and reported on market conditions there") (quoting *Frankenmuth Mut. Ins. Co. v. Appalachian Underwriters, Inc*., 2004 WL 1406121 at * 9 (E.D. Mich. June 21, 2004)). By contrast here, viewing the evidence in a light most favorable to Chagrinovations, Lean In performed services in Ohio by communicating with Chagrinovations' representatives in Ohio to provide advice on presentations, sales analysis, and strategic planning for the sales of Chagrinovations' products. (Naim Decl. at ¶¶ 10-13, PageID# 167; Doc. No. 5-2 at PageID# 97; Doc. No. 5 at ¶ 3.) Accordingly, and for all of the above reasons, the Court finds that *Calphalon* is distinguishable from the instant case.[6]

Lastly, the Court rejects Lean In's argument that the Arkansas choice of law provision in the Consulting Agreement requires a finding that it did not purposefully avail itself of the privilege of acting in Ohio. The Sixth Circuit has explained that, while a choice of law provision may be one factor to consider in evaluating purposeful availment, it is "not decisive." *Calphalon*, 228 F.3d at 723. *See also MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 902 (6th Cir. 2017) (finding

---

[6] Lean In's reliance on *Spyglass Group LLC v. Genesis Health Clubs Management, Inc*., 2022 WL 17251820 (N.D. Ohio Nov. 28, 2022) (Calabrese, J.) is similarly misplaced. Notably, in that case, it was the *plaintiff* that (1) initiated the parties' business relationship, and (2) sent the draft contract to defendant in Kansas. *Id*. at * 1, 5. Indeed, in finding no purposeful availment, the court in *Spyglass* emphasized and relied on the fact that the defendant "did not initiate the transaction or the relationship between the parties." *Id*. at * 5. Here, by contrast, Chagrinovations has both alleged and provided evidence that it was Lean In that affirmatively reached out to Chagrinovations in Ohio to initiate and establish an ongoing business relationship between the parties. And it was Lean In that sent the proposed Consulting Agreement to Chagrinovations in Ohio, where it was signed by Chagrinovations in Ohio. Moreover, in *Spyglass*, the defendant never visited plaintiff in Ohio. *Id*. at * 2-3. Here, viewing the evidence in a light most favorable to Chagrinovations, a representative of Lean In met with Chagrinovations' representatives in Ohio to discuss matters relating to the Consulting Agreement. Accordingly, the Court finds that *Spyglass* is distinguishable from the instant action.

purposeful availment despite German venue and choice of law provisions as follows: "Schmückle is correct that the German venue and choice-of-law clauses in his employment agreement provide some evidence of his intent not to be subject to suit in Michigan, but, at this stage of the litigation, those provisions are not dispositive as to our minimum-contacts inquiry. Additionally, those clauses must be balanced against Schmückle's actions after signing the agreement that support the notion that he did intend to conduct business in Michigan. Because the evidentiary burden on plaintiffs is minimal at this stage, we find that the employment agreement, alone, is not enough to defeat plaintiffs' *prima facie* case.") (internal citations omitted).

In sum, viewing the evidence in a light most favorable to Chagrinovations, the Court finds that Chagrinovations has satisfied its burden of demonstrating that Lean In purposefully availed itself of the privilege of acting in Ohio. Lean In's contacts with Ohio involved more than the "mere existence of a contract." *Calphalon*, 228 F.3d at 722. Rather, Chagrinovations has alleged and come forward with evidence that Lean In (1) initiated the parties' business relationship by reaching out to Chagrinovations in Ohio; (2) communicated with Chagrinovations' Ohio-based representatives to negotiate the terms of the parties' Consulting Agreement; (3) sent the proposed Consulting Agreement to Chagrinovations in Ohio for review and signature; (4) established a long-standing business relationship with Chagrinovations that lasted over two years; (5) provided services to Chagrinovations through phone calls, emails, and other communications directed to Chagrinovations' representatives in Ohio, including a physical visit to Chagrinovations' office in Ohio; and (6) sent its demand letter for additional commission payments to Chagrinovations in Ohio.[7] Accordingly, and

---

[7] In its Reply Brief, Lean In appears to suggest that, regardless of the averments in Mr. Naim's Declaration, this action should be dismissed for lack of specific personal jurisdiction because Chagrinovations failed to satisfy its *prima facie* burden through the allegations in its Amended Complaint alone. (Doc. No. 14 at PageID# 173.) The Court is not

for all the above reasons, the Court finds that Chagrinovations has met its burden of establishing the first factor of the test for specific personal jurisdiction under *Mohasco, supra*.

### b. Arise From

The second factor in evaluating specific jurisdiction requires that a cause of action "arise from" the defendant's activities in the forum state. *Mohasco Indus., Inc.*, 401 F.2d at 381. *See also Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351, 362 (2021). The Constitution requires "an affiliation between the forum and the underlying controversy." *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017)) *See also Sullivan v. LG Chem, Ltd.*, 79 F. 4th 651, 671-672 (6th Cir. 2023). "This requires that [defendant]'s contacts be 'related to the operative facts of the controversy.'" *MAG IAS*, 854 F.3d at 903 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "'[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Sullivan,* 79 F.4th at 672 (quoting *Bristol-Myers*, 582 U .S. at 262). Stated differently, "'[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract.'" *Calphalon,* 228 F.3d at 723–24 (quoting *Mohasco Indus., Inc.*, 401 F.2d at 384, fn.29). "[T]his is a 'lenient standard,' requiring only that the cause of action have a

---

convinced that the averments in Mr. Naim's Declaration should be disregarded in evaluating whether Chagrinovations has met its *prima facie* burden. However, assuming *arguendo* that this is the case, Chagrinovations sufficiently alleges in its Amended Complaint that (1) it was Lean In that initiated the parties' business relationship (Doc. No. 5 at ¶ 10); (2) the parties' business relationship was not a "one-shot transaction" but, rather, involved ongoing, mutual obligations (*Id.* at ¶¶ 12-19; Doc. No. 5-2); (3) the parties operated under the Consulting Agreement for over two years, i.e., from December 2022 to June 2025 (Doc. No. 5 at ¶ 18); and that (4) during that time period, Lean In provided services in Ohio and had regular contacts with individuals and entities in Ohio in connection with providing those services (*Id.* at ¶ 3.) In addition, a copy of the parties' Consulting Agreement, including the "Description of Services" to be performed thereunder, is attached to the Amended Complaint as Exhibit B. (Doc. No. 5-2.)

29

'substantial connection' to the defendant's activity in the state." *MAG IAS*, 854 F.3d at 903 (quoting *Bird,* 289 F.3d at 875).

Relying again on *Calphalon,* Lean In argues that "none of the relevant facts from which Chagrinovations' claims arise occurred in Ohio." (Doc. No. 12-1 at PageID# 127.) Lean In asserts that it "provided the services as agreed to and contemplated by the Consulting Agreement exclusively in Arkansas" by scheduling and attending meetings with Walmart in Bentonville, Arkansas. (*Id*.) Thus, Lean In insists that "[n]one of the facts at issue "actually occurred in" Ohio. (*Id*.) Lastly, Lean In maintains that "Chagrinovations is not claiming it was aggrieved" but, rather, "is seeking certain declarations of a disputed contract interpretation." (*Id*.)

In response, Chagrinovations argues that the "arise from" factor is met because "the dispute that forms the basis of this lawsuit stems directly from (1) Defendant's initiation and carrying on of a business relationship with Chagrinovations; (2) the Consulting Agreement and the services Defendant provided thereunder; and (3) Defendant's position that Chagrinovations has breached its contractual duties." (Doc. No. 13 at PageID# 151.) Chagrinovations asserts that *Calphalon* is distinguishable because, in that case, the Sixth Circuit found that the alleged breach of contract occurred outside of the forum. (*Id*. at PageID# 152.) By contrast, Chagrinovations maintains that "the relevant breach at issue here is Chagrinovations' alleged failure to pay commission owed under the Consulting Agreement – a breach that could only have occurred in this forum." (*Id*.)

In its Reply, Lean In argues that Chagrinovations' claims do not "arise from" any Ohio contacts because "[t]he operative facts of this lawsuit concern services performed in Arkansas, commission calculations, and payments after termination of the Consulting Agreement." (Doc. No.

30

14 at PageID# 177.)  Lean In asserts that "none of those facts occurred in Ohio" and, therefore, the second factor is not met.

For the following reasons, the Court finds that Chagrinovations has satisfied the "arising from" requirement for establishing specific personal jurisdiction.  Chagrinovations' first declaratory judgment claim arises out of the parties' conflicting interpretations of the term "commitments" as used in Paragraph 2(b) of the Consulting Agreement.  (Doc. No. 5 at PageID# 63.)  As discussed above, Lean In reached out to Chagrinovations in Ohio, sent a proposed draft of the Consulting Agreement to Chagrinovations in Ohio, and negotiated the terms of that agreement with Chagrinovations' Ohio-based representatives.  (Naim Decl. at ¶¶ 6-9, PageID# 166-167; Doc. No. 5 at ¶ 10, PageID# 60.)  Moreover, Chagrinovations alleges that Lean In has demanded additional payment under that Paragraph 2(b) of the parties' Consulting Agreement, asserting that Chagrinovations breached the Agreement by failing to pay commission for orders or commitments submitted by Walmart or Sam's Club to Chagrinovations before the termination of that Agreement, even if such orders or commitments did not result in a sale until after the termination.  (Doc. No. 5 at ¶¶ 21, 22, PageID# 62.)  Thus, the alleged breach that is the center of Chagrinovations' first declaratory judgment claim occurred in Ohio.  *See Spyglass*, 2022 WL 17251820 at * 6 (noting that, to satisfy the "arising from" test, "the actual breach of the contract must have occurred in the State where the plaintiff brings suit") (citing *Calphalon*, 228 F.3d at 724 and *Kerry Steel*, 106 F.3d at 152).

Based on the above, and given the lenient standard for this factor, the Court finds that Chagrinovations has demonstrated that the "operative facts" of the instant dispute relate to Lean In's contacts with Chagrinovations in Ohio.  *See, e.g., Commodigy*, 417 F.Supp.3d at 923 (finding plaintiff satisfied the "arising from" test where "[t]he claims ar[o]se from [defendant's] contract with Plaintiff,

31

and the contract created the obligations" that were allegedly violated); *Huey Jian Liang v. AWG Remarketing*, 2015 WL 65258 at *7 (S.D. Ohio Jan. 5, 2015) (finding "arising from" factor met where "[t]he dispute . . . arises from the [parties'] Agreement"); *The Andersons, Inc., v. Demrex Indus. Services, Group, LLC.*, 590 F.Supp.2d 963, 970 (N.D. Ohio 2008) (finding "arising from" factor met where "defendants solicited, negotiated and executed a business contract with an Ohio-based corporation, the same contract on which Andersons base its breach of contract claim.")

### c.      Reasonableness

The third, and final, factor requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco Indus., Inc.*, 401 F.2d at 381.  When the first two prongs of the specific personal jurisdiction test are met, "there is an inference of reasonableness and 'only the unusual case will not meet the third criteria.'"  *MAG IAS Holdings, Inc.*, 854 F.3d at 903-904 (quoting *Air Prods. & Controls, Inc.* 503 F.3d at 554).  *See also CompuServe*, 89 F.3d at 1268.  "[W]hen considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.  *See also Sullivan*, 79 F.4th at 674; *Air Prods. & Controls, Inc.* 503 F.3d at 554-555.

Here, Lean In argues that none of the above factors weigh in favor of exercising personal jurisdiction.  (Doc. No. 12-1 at PageID# 128.)  Specifically, Lean In argues that all of its employees are Arkansas residents and "most of the necessary discovery will occur in Arkansas."  (*Id*.)  Lean In further asserts that "Ohio has virtually no interest in this dispute" because the case concerns a contract

governed by Arkansas law and services "performed exclusively in the State of Arkansas." (*Id*.)  Lean In maintains that "Chagrinovations' interest in obtaining relief is *de minimis* at best," asserting that Chagrinovations "has no interest or need to seek relief at this point as [it] has filed nothing more than an anticipatory declaratory judgment." (*Id*.)  Lastly, Lean In argues that "Arkansas is the state with the interest in securing the most efficient resolution of the dispute." (*Id*.)

In response, Chagrinovations argues that Lean In would not be overly burdened if required to litigate in Ohio because, due to technological advancements such as electronic discovery and remote depositions, "the chances of any of Defendant's employees having to leave Arkansas for this litigation are practically zero." (Doc. No. 13 at PageID# 153.)  Chagrinovations next asserts that the declaratory relief sought in the Amended Complaint is neither *de minimis* nor anticipatory, in light of Lean In's demand that Chagrinovations pay over $75,000 in commissions.  (*Id*.)  Chagrinovations maintains that "Ohio has a strong interest in adjudicating a suit brought by Ohio residents, and in seeing that its residents get the benefit of their bargains." (*Id*.)  And, lastly, Chagrinovations argues that Arkansas does not have a greater interest in the instant action because "Defendant's insistence that all events happened in Arkansas is simply untrue." (*Id*.)

For the following reasons, the Court finds that Chagrinovations has demonstrated that Lean In has a substantial enough connection with Ohio to make the exercise of jurisdiction over it reasonable.  As an initial matter, because the first two elements of the *Mohasco* test have been met, there is an inference that Lean In has a substantial connection with Ohio.  *See MAG IAS Holdings, Inc*., 854 F.3d at 903-904; *Air Prods. & Controls, Inc*. 503 F.3d at 554; *CompuServe*, 89 F.3d at 1268.  Moreover, upon consideration of the four factors set forth above, the Court concludes that this is not the "unusual case" in which the exercise of personal jurisdiction would be unreasonable.  *Mohasco*,

33

401 F.2d at 384.  Exercising personal jurisdiction over Lean In comports with traditional notions of fair play and substantial justice.  Though it may be minimally burdensome for Lean In to defend a suit in Ohio, when it reached out to and entered into the Consulting Agreement with Chagrinovations in Ohio, Lean In knew that it "was making a connection with Ohio, and presumably [it] hoped that connection would work to its benefit."  *CompuServe,* 89 F.3d at 1268.

Additionally, the Court agrees with Chagrinovations that Ohio has an interest in resolving a suit brought by one of its residents and in seeing that its residents get the benefit of their bargains. *See, e.g., Tharo Sys., Inc.,* 196 Fed. Appx. at 372 (finding reasonableness factor met because Ohio has a strong interest in resolving a suit brought by an Ohio company for breach of contract); *The Andersons, Inc.*, 590 F.Supp.2d at 970 (finding reasonableness factor met, in part, because "Ohio has an interest in resolving suits brought by one of its citizens and in seeing that the residents get the benefit of their bargain."); *CrossCountry Mortgage, Inc. v. Messina*, 2019 WL 5653288 at * 14 (N.D. Ohio Oct. 31, 2019)(finding reasonableness factor met because "Ohio has a strong interest in enforcements of its laws and enforcing contracts entered into by Ohio-based businesses.")  Lastly, the Court agrees with Chagrinovations that its interest in obtaining relief is not *de minimis* or anticipatory, given that Lean In has demanded payment from Chagrinovations for commissions in an amount in an excess of $75,000.  (Doc. No. 5 at ¶ 21, PageID# 62.)

Accordingly, and for all the reasons set forth above, the Court finds that Chagrinovations has established that the exercise of specific personal jurisdiction over Lean In comports with due process.

### 2.    Ohio Long Arm Statute

Chagrinovations must also show that jurisdiction is authorized by Ohio's long-arm statute, i.e., Ohio Rev. Code § 2307.382.   As a threshold issue, the parties dispute whether Ohio's long-arm

statute is conterminous with the limits of due process or whether Ohio's long-arm statute is more restrictive.  (Doc. No. 12-1 at PageID# 122; Doc. No. 13 at PageID#s 154-157.)  Lean In argues that Ohio's long arm statute is more restrictive.  (Doc. No. 12-1 at fn 1, PageID# 122.)  Chagrinovations maintains that, since the statute was amended in 2021, the majority of courts have correctly concluded that it is coextensive with and identical to the federal minimum contacts analysis.  (Doc. No. 13 at PageID# 154.)

"If [Ohio's long arm statute] is conterminous, the Court need only address the constitutional due process."  *Bbc Ice Cream, LLC*, 2026 WL 878806 at * 3 (citing *AlixPartners, LLP*, 836 F.3d at 549)(where long-arm statute "extends to the limits imposed by federal constitutional due process requirements[ ], the two questions become one").  However, if Ohio's long arm statute is more restrictive, this Court must assess whether Chagrinovations alleges facts sufficient to establish jurisdiction under that statute.  *See Sullivan*, 79 F.4th at 664 (requiring "separate analysis" from the Due Process Clause if long-arm statute does not extend to the limits imposed by federal constitutional requirements); *Bbc Ice Cream, LLC*, 2026 WL 878806 at * 3.

Prior to 2021, there was no dispute Ohio's long-arm statute required a separate analysis.  *See Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) ("Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law.")[8]  In April

---

[8] Pre-amendment, "Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that '[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.'" *AmaTech Grp. Ltd. v. Fed. Card Servs.*, LLC, 2022 WL 44674 at * 4 (S.D. Ohio Jan. 5, 2022) (quoting O.R.C. § 2307.382).  Based on that language, "courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows." *Id.*

2021, however, the Ohio General Assembly amended Ohio's long-arm statute to extend the reach of Ohio's long-arm statute to the limits of the U.S. Constitution. The amendment revised subsection (C) of Ohio Rev. Code § 2307.382 to read: "In addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C).

Since the Ohio legislature amended the long-arm statute in 2021, "courts in this Circuit have debated whether the amendment extended the long-arm statute to the limits of due process, and courts have come to different conclusions." *Bbc Ice Cream, LLC*, 2026 WL 878806 at * 3. Some courts "have concluded that Ohio's long-arm statute now extends personal jurisdiction to the fullest extent that the U.S. Constitution permits." *AmaTech Grp. Ltd. v. Federal Card Services, LLC*, 2022 WL 44674 at *5 (S.D. Ohio Jan. 5, 2022). *See, e.g., Angel's Dream, LLC v. Toledo Jet Ctr*., LLC, 721 F.Supp.3d 601, 610 (N.D. Ohio 2024) (finding amendment extended Ohio's long-arm statute to the extent of due process); *Bren Ins. Servs., Inc. v. Envision Pharm. Servs., LLC*, 2022 WL 5160746 at *3 (N.D. Ohio Oct. 5, 2022) ("[T]he Ohio General Assembly extended Ohio's long-arm statute to the limits of the United States Constitution."). Other district courts "have concluded that the purpose of the new language in § 2307.382(C) is merely to allow for 'general jurisdiction' over non-resident defendants in appropriate circumstances." *AmaTech Grp. Ltd.,* 2022 WL 44674 at *5. *See, e.g., Premier Prop. Sales Ltd v. Gospel Ministries Int'l , Inc*., 539 F.Supp.3d 822, 827 fn 2 (S.D. Ohio May 17, 2021) ("The Ohio legislature recently revised the state's long arm statute to permit general jurisdiction over non-resident defendants where it was not recognized before ... [The amendment] does not, however, collapse the long-arm statute's specific jurisdiction test into the Federal

standard."); *Spyglass Grp., LLC*, 2022 WL 17251820 at *4 ("This amended language appears to allow the exercise of general jurisdiction over non-resident defendants where the Constitution permits.  But it does not collapse the specific jurisdiction analysis into a single due-process inquiry.") (citations omitted).

The Court need not address this issue.  Chagrinovations argues that, even if Ohio's long arm statute is not coextensive with federal due process, this Court has specific personal jurisdiction over Lean In because Lean In transacted business in Ohio for purposes of Ohio Rev. Code § 2307.382(A). (Doc. No. 13 at PageID#s 156-157.)  Lean In does not acknowledge or address this argument in its Reply Brief.  (Doc. No. 14.)  For the following reasons, the Court agrees with Chagrinovations that Lean In "transacted business" in Ohio.

Ohio Rev. Code § 2307.382(A)(1) provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state...."  Ohio Rev. Code § 2307.382(A)(1). The Ohio Supreme Court has stated that § 2307.382(A)(1) is "'very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio.'"  *Muzzin v. Brooks*, 859 N.E.2d 584, 588 (Ohio Ct. App. 8th Dist. 2006) (quoting *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990)).  *See also Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 160 (S.D. Ohio 2012); *A.B. Pratt & Co. v. Bridgeport Group, LLC*, 2023 WL 2865640 at * 8 (N.D. Ohio April 10, 2023).  The Supreme Court of Ohio has further explained:

> "Transact," as defined by Black's Law Dictionary (5th ed. 1979) 1341, "means to prosecute negotiations; to carry on business; to have dealings [ ]. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion[ ]."

*Ky. Oakes Mall Co.*, 559 N.E.2d at 480. *See also Int'l Paper Co. v. Goldschmidt*, 872 F.Supp.2d 624, 629 (S.D. Ohio 2012); *A.B. Pratt & Co.*, 2023 WL 2865640 at * 8.

When interpreting Ohio's long-arm statute, federal courts within this Circuit have found that "while the mere existence of a contract may not be enough to confer personal jurisdiction [under Section (A)(1)], a contract may qualify as transacting business under Ohio's long-arm statute, particularly when it imposes continuing obligations on the parties affecting the State of Ohio." *Tarkett USA, Inc v. Harnix Corp.*, 2017 WL 2443139 at * 3 (N.D. Ohio June 6, 2017). *See also A.B. Pratt & Co.*, 2023 WL 2865640 at * 8; *Alloy Bellows & Precision Welding, Inc. v. Cole*, 2015 WL 6964579 at * 3 (N.D. Ohio Nov. 10, 2015). Moreover, the Ohio Supreme Court has noted that "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994). Lastly, under the language of Ohio's long-arm statute, a plaintiff must also show that the case deals with a "cause of action arising from" the business transacted in Ohio. *See* Ohio Rev. Code § 2307.382(A)(1); *Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006).

Here, Lean In does not contest that it "transacted business" in Ohio for purposes of Ohio Rev. Code 2307.382(A)(1). And, upon its own review, the Court finds, based on the record before it, that Lean In transacted business in Ohio withing the meaning of Ohio's long arm statute because it (1) initiated the parties' business relationship by reaching out to Chagrinovations in Ohio; (2) communicated with Chagrinovations' Ohio-based representatives to negotiate the terms of the parties' Consulting Agreement; (3) sent the proposed Consulting Agreement to Chagrinovations in Ohio for review and signature; (4) established a long-standing business relationship with Chagrinovations that lasted over two years; and (5) provided services to Chagrinovations through

38

phone calls, emails, and other communications directed to Chagrinovations' representatives in Ohio, including a physical visit to Chagrinovations' office in Ohio.

Under similar circumstances, courts in this Circuit (including the Sixth Circuit) have found that a defendant "transacted business" in Ohio for purposes of Ohio Rev. Code § 2307.382(A)(1). *See, e.g., Speedeon Data, LLC*, 718 Fed. Appx at 336 (holding that Ohio Rev. Code § 2307.382(A)(1) was satisfied where the defendant "reached out to [the plaintiff] in Ohio for a business relationship," negotiated with the plaintiff in Ohio, and "entered into statements of work for services to be completed in Ohio"); *Calvary Industries, LLC*, 2022 WL 17536723 at * 4-5 (finding that Ohio Rev. Code § 2307.382(A)(1) was satisfied where defendant initiated a business relationship with plaintiff and communicated regularly with plaintiff via telephone, email, and text message in Ohio for over a year); *Spyglass*, 2022 WL 17251820 at * 6 (finding that Ohio Rev. Code § 2307.382(A)(1) was satisfied because defendant "had [business] dealings" in the State of Ohio with plaintiff).

For all the reasons set forth above, the Court finds that Chagrinovations has demonstrated that Lean In's actions constituted "transacting business" in Ohio and, therefore, this Court has specific personal jurisdiction over Lean In under Ohio's long arm statute.[9]  Accordingly, and because

---

[9] In its Motion, Lean In argues (summarily and in a footnote) that specific personal jurisdiction does not exist under Ohio Rev. Code § 2307.382(A) because Chagrinovations cannot show that Chagrinovations' declaratory judgment claims "arise from" Lean In's conduct for purposes of that statute. (Doc. No. 12-1 at fn 1, PageID# 122.)  Specifically, Lean In asserts that Ohio's "arising from" requirement is more restrictive than the "arising from" requirement under the due process analysis, with the former requiring a showing of proximate causation and the latter requiring only a showing of "but for" causation. (*Id.*)  The Court finds that Lean In waived this particular argument.  It is well established that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).  *See also Gradisher v. City of Akron*, 794 F.3d 574, 586 (6th Cir. 2015) (same).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson*, 125 F.3d at 995.  Here, the Court finds that, by failing to provide any meaningful discussion of this issue, Lean In has waived its argument that Chagrinovations failed to satisfy the allegedly more restrictive causation requirement set forth in Ohio Rev. Code § 2307.382(A).  Lean In fails to adequately discuss or cite any binding authority regarding this issue, and this Court will not develop and/or research this issue on Lean In's behalf.

Chagrinovations has demonstrated that the requirements of both the Due Process clause and Ohio's long arm statute are satisfied, the Court denies Lean In's Motion to the extent it seeks dismissal on the basis of lack of personal jurisdiction.

**B.      Venue**

Lean In next argues that the instant action should be dismissed or transferred on the basis of improper venue.  (Doc. No. 12-1 at PageID#s 129-131.)  Lean In first asserts that venue is not proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to" Chagrinovations' claims did not occur here.  (*Id.*)  Thus, Lean In argues that the Amended Complaint should either be dismissed or transferred to the United States District Court for the Western District of Arkansas pursuant to 28 U.S.C. § 1406(a).  (*Id.*)  In the alternative, Lean In argues that the instant action should be transferred to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).  (*Id.*)   Chagrinovations opposes both arguments.  (Doc. No. 13 at PageID#s 157-162.)

**1.      28 U.S.C. § 1391(b)**

"Whether venue is wrong or improper ... is generally governed by 28 U.S.C. § 1391."  *Atl. Marine Const. Co., Inc.,* 571 U.S. at 55.  Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

40

28 U.S.C. § 1391(b)(2).  If venue is not proper under one of these three enumerated categories, the case must be dismissed or transferred under 28 U.S.C. § 1406(a).  *Atl. Marine Const. Co., Inc.,* 571 U.S. at 56.

Here, Chagrinovations alleges that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district."  (Doc. No. 5 at ¶ 5, PageID# 59.)  Interpreting 28 U.S.C. § 1391(b)(2), the Sixth Circuit found that "in diversity of citizenship cases the plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim."  *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).  To determine whether venue is proper under 28 U.S.C. § 1391(b)(2) in a contract dispute, courts consider "(1) where the contract was negotiated and executed, (2) where the contract was performed, and (3) where the alleged breach occurred."  *Reilly*, 6 F.Supp.3d at 766.  *See also DocuVoice, LLC*, 2026 WL 1122172 at * 3; *Kinzie Advanced Polymers, LLC*, 2025 WL 2903642 at * 4; *Woods v. Brooks*, 2020 WL 2182983 at * 2 (S.D. Ohio May 6, 2020).  Additionally, courts may consider "where the effects of a defendant's alleged breach are experienced."  *Reilly,* 6 F.Supp.3d at 766.

Here, Lean In argues that venue is not proper in this District under 28 U.S.C. § 1391(b)(2) because "none of the events giving rise to Chagrinovations' Amended Complaint occurred in Ohio, and Chagrinovations cannot present any evidence that a 'substantial part' occurred there."  (Doc. No. 12-1 at PageID# 129.)  In support of this argument, Lean In again maintains that it only performed services under the Consulting Agreement in Arkansas – not in Ohio.  (*Id*.)  Lean In asserts that "the only alleged 'breach' is Chagrinovations' claim that Lean In failed to meet some obligation under the

parties' agreement" and that, even if taken as true, this is insufficient to demonstrate proper venue because "any such breach would have occurred in Arkansas, not Ohio." (*Id.*) Thus, Lean In maintains that "the proper venue for this matter is the Western District of Arkansas" and the instant action should be "dismissed or transferred to the proper venue under 28 U.S.C. § 1406(a)." (*Id.* at PageID# 130.)

In response, Chagrinovations argues that "venue is proper in this District because a number of the events giving rise to Chagrinovations' claims occurred here," including: (1) Chagrinovations' receipt of Defendant's initial offer to provide services; (2) Chagrinovations' consideration and contemplation of Defendant's offer; (3) negotiation of the Consulting Agreement by Chagrinovations' representatives; (4) the execution of the Consulting Agreement by Chagrinovations; (5) communications to and from Chagrinovations via phone, email, and Zoom, concerning the Consulting Agreement and services provided; (6) the increase in revenue to Chagrinovations from its increased sales to Walmart; (7) the payment of commissions and other fees owed by Chagrinovations to Defendant; (8) Chagrinovations' decision to terminate the Consulting Agreement; (9) the drafting of Chagrinovations' notice of termination of the Consulting Agreement; (10) Chagrinovations' alleged failure to pay Lean In for the commissions at issue; and (11) Chagrinovations' receipt of Defendant's demand for payment of additional commissions. (Doc. No. 13 at PageID#158.) In sum, Chagrinovations asserts that venue is appropriate in this District because the Consulting Agreement was negotiated and executed in Ohio and the location of the alleged breach at issue is in Ohio. (*Id.*at PageID# 159.)

In its Reply, Lean In does not acknowledge or address Chagrinovations' arguments that venue is appropriate in this District under 28 U.S.C. § 1391(b)(2). (Doc. No. 14 at PageID# 179.)

For the following reasons, the Court finds that Chagrinovations has sufficiently demonstrated that "a substantial part of the events or omissions giving rise to" the instant action occurred in the Northern District of Ohio.  First, as discussed at length *supra*, Chagrinovations has come forward with evidence that Lean In reached out to Chagrinovations (which has its office and principal place of business in this District) for the purpose of establishing an ongoing business relationship. (Naim Decl. at ¶¶ 3, 6, PageID# 166.) Chagrinovations has also come forward with evidence that (1) it conducted its end of the negotiations with Lean In in this District; (2) Lean In sent the proposed Consulting Agreement to Chagrinovations in this District; and (3) Chagrinovations executed the parties' Agreement in this District.  (*Id*. at ¶¶ 7-9, PageID#s 166-167.)  Second, this Court has already found that Lean In performed services under the Consulting Agreement, in part, in this District by providing advice and other consulting services to Chagrinovations through phone calls, emails, and other communications directed to Chagrinovations' representatives in this District, including a physical visit to Chagrinovations' office in this District.  (*Id*. at ¶¶ 10-14, PageID# 167.)

Third, the Court finds that the alleged breach that is the subject of Chagrinovations' first declaratory judgment claim occurred in this District.  Specifically,  Chagrinovations alleges that Lean In demanded additional payment under Paragraph 2(b) of the Consulting Agreement, asserting that Chagrinovations breached the Agreement by failing to pay commission for orders or commitments submitted by Walmart or Sam's Club to Chagrinovations before the termination of that Agreement. (Doc. No. 5 at ¶¶ 21, 22, PageID# 62.)  Thus, the alleged breach that is the center of Chagrinovations' first declaratory judgment claim occurred in this District.  And Chagrinovations has come forward with evidence that it received Lean In's demand letter in this District.  (Naim Decl. at ¶¶ 18-19, PageID#s 167-168.)

Finally, if the Court determines that Lean In's interpretation of Paragraph 2(b) of the Consulting Agreement is correct, Chagrinovations would feel the effects in this District as it would potentially be required to pay Lean In for the commissions at issue.  Regarding Chagrinovations' second declaratory judgment claim, Chagrinovations has arguably felt the effects of Lean In's alleged failure to provide the information set forth in Paragraph 3 of the Consulting Agreement in this District.  (Doc. No. 5 at PageID#s 64-65.)

Accordingly, and for all the above reasons, the Court finds that Chagrinovations has shown by a preponderance of the evidence that there is a substantial connection between the Northern District of Ohio and its declaratory judgment claims in this action.  Lean In's arguments to the contrary are without merit.  Assuming *arguendo* that Lean In has shown a substantial connection to Arkansas, "venue may be proper in two or more districts." *Reilly,* 6 F.Supp.3d at 767 (citations and quotations omitted).  As one district court recently explained:

> In the Sixth Circuit, a plaintiff is not required to show that it has chosen the "best" venue in order to satisfy § 1391(b)(2). *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).  Rather, the relevant inquiry is whether the chosen district has a substantial connection to the claim, regardless of whether other forums have greater contacts. *Id*. Venue can be proper in multiple districts.  Indeed, venue is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred," even if a more substantial part occurred in a different district. *Capitol Specialty Ins. Corp. v. Splash Dogs LLC*, 801 F. Supp. 2d 657, 671–72 (S.D. Ohio 2011).

*Kinzie Advanced Polymers, LLC*, 2025 WL 2903642 at * 3.  In sum, "defendants are not guaranteed a preferred venue, only a proper venue." *Reilly*, 6 F.Supp.3d at 767.  *See also Woods*, 2020 WL 2182983 at * 2.  While Lean In may prefer the Western District of Arkansas, venue is proper in the Northern District of Ohio for all the reasons set forth above.  Accordingly, Lean In's request that the instant action be dismissed for improper venue is denied.

### 2.    28 U.S.C. § 1404(a)

In the alternative, Lean In argues that the Court should exercise its discretion to transfer the instant action to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a).  (Doc. No. 12-1 at PageID#s 130-131.)  As noted *supra*, in evaluating Lean In's request, the first inquiry is whether the proposed alternative venue is a district where the action may have been brought.  *See* 28 U.S.C. § 1404(a); *Bbc Ice Cream, LLC.*, 2026 WL 878806 at * 10.  If so, this Court must then consider various case-specific and private factors, including the convenience of the parties and witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems associated with trying the case most expeditiously and inexpensively; and  the interests of justice.  *See, e.g., Means*, 836 F.3d at 651-52; *Bbc Ice Cream, LLC*, 2026 WL 878806 at * 10; *DocuVoice, LLC*, 2026 WL 1122172 at * 4; *Woods,* 2020 WL 2182983 at * 3.  "'Courts may also consider public-interest factors such as (1) court congestion, (2) local interest in deciding the controversy at home, and (3) in diversity cases, the interest of conducting the trial in the forum of the governing law.'" *Woods*, 2020 WL 2182983 at * 3 (quoting *Flatt*, 2019 WL 6044159 at *2).

Here, Lean In first asserts that the instant action could have been filed in the Western District of Arkansas because Lean In is subject to general personal jurisdiction in that State and "the actions giving rise to the First Amended Complaint all occurred in Bentonville, Arkansas."  (Doc. No. 12-1 at PageID#s 130-131.)  As to the relevant factors, Lean In argues that "Chagrinovations' claims make clear that Walmart is a key non-party entity in this dispute."  (*Id*.)  Thus, Lean In argues that "the sources of evidence and primary witnesses to this dispute are in Arkansas."  (*Id*.)  Lean In maintains

that "given the scant connection of Ohio to this case, Arkansas is the more convenient venue, and the interests of justice support transferring this action there." (*Id*.)

In response, Chagrinovations does not dispute that the instant action could have been brought in the Western District of Arkansas. (Doc. No. 13 at PageID#s 159-162.) Chagrinovations argues, however, that Lean In's request to transfer venue should be denied for multiple reasons. (*Id*.) First, Chagrinovations argues its choice of forum should be granted considerable deference because "litigating this case in Ohio will impose little, if any, burden on Defendant." (*Id*.) Regarding the private interest factors, Chagrinovations asserts that a majority of the "sources of proof" upon which the parties are likely to rely are documents which "exist in electronic form [and] are easily accessible in Ohio via computer or other electronic means." (*Id*.) Additionally, Chagrinovations argues that "many of the witnesses involved in this dispute are located in Ohio." (*Id*.) While Chagrinovations acknowledges that "some witnesses are located in Arkansas," it asserts that "the now-common practice of conducting depositions remotely means that testimony from such witnesses can be obtained with ease." (*Id*.)

Regarding the public interest factors, Chagrinovations argues that Lean In "has not identified any administrative challenges to having this case heard and determined by this Court, and no such challenges exist." (*Id*.) Lastly, Chagrinovations asserts that "having this cased decided in Ohio will not impose jury duty on a community that has no relation to this litigation ..., particularly because Chagrinovations is a local business attempting to defend itself from unwarranted and improper demands for payment by an out-of-state entity." (*Id*.)

46

In its Reply, Lean In argues (summarily) that "transfer remains warranted under 28 U.S.C. § 1404(a)" because "the operative facts occurred in Arkansas, relevant witnesses are located there, and Arkansas law governs."  (Doc. No. 14 at PageID# 179.)

For the following reasons, the Court finds that the balance of the relevant case-specific, private and public factors weigh against transfer.  While Lean In argues that its witnesses and records are located in Arkansas, Chagrinovations' witnesses and records are in this District.  "'Merely shifting the inconvenience from one party to another does not meet the Defendant's burden.'" *DocuVoice*, 2026 WL 1122172 at * 4 (quoting *One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, 2013 WL 1136726 at * 3 (W.D. Tenn. 2013)).  *See also Woods,* 2020 WL 2182983 at * 3 (finding that "'[a] generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue.'") (quoting *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192 at *4 (S.D. Ohio Mar. 16, 2020) (citation and quotations omitted)).  Moreover, Lean In does not contest Chagrinovations' assertion that any burden will be lessened by the availability of electronic discovery and remote depositions.

Lean In's only other argument is that Arkansas has a greater interest in the instant action because "the actions giving rise to the First Amended Complaint all occurred in Bentonville, Arkansas" and "Arkansas law governs."  (Doc. No. 12-1 at PageID#131; Doc. No. 14 at PageID# 179.)  However, this Court has already found (for all the reasons discussed *supra*) that the instant action has a substantial connection to Ohio.  And this Court is perfectly capable of interpreting and applying Arkansas law.

Finally, Lean In has not addressed any of the public interest factors and, thus, has waived any opposition to Chagrinovations' arguments that those factors weigh against transfer.  *See Woods*, 2020

47

WL 2182983 at * 3 (finding that defendants waived any argument regarding § 1404(a) factors that they failed to address).  And, in any event, based on the Court's independent review of the record, the public interest factors do not favor transfer either.

Accordingly, and for all the reasons set forth above, Lean In's request to transfer this action to the Western District of Arkansas pursuant to 28 U.S.C. § 1404(a) is denied.

## V.      Conclusion

For all the reasons set forth above, Defendant Lean In, LLC's Motion to Dismiss Amended Complaint or, in the Alternative, Transfer Case (Doc. No. 12) is DENIED.

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  July 23, 2026                              U. S. DISTRICT JUDGE